United States District Court
Middle District of Florida
Orlando Division

**REBECCA LATRICE PARKER,**

    **Plaintiff,**

v.                                                     **NO. 6:24-CV-1388-JSS-LLL**

**FRANK BISIGNANO,**
**COMMISSIONER OF SOCIAL SECURITY,**[1]

    **Defendant.**

_____

### Report and Recommendation

Rebecca Latrice Parker seeks judicial review of a decision by the Commissioner of Social Security denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). For the reasons stated below, I respectfully recommend the Commissioner's decision be affirmed.

### Background

Parker was born on April 22, 1969, and completed high school; she has previous employment experience as an account clerk. Tr. 26-27, 234, 241, 281. On June 2, 2021, Parker filed applications for DIB and SSI benefits with an onset date of December 15,

---

[1] Frank Bisignano became Commissioner of Social Security on May 7, 2025. Thus, under Federal Rule of Civil Procedure 25(d), Frank Bisignano should be substituted as the defendant in this action. No further action need be taken pursuant to the last sentence of 42 U.S.C. § 405(g).

2020. Tr. 17, 57, 67, 234-47. Parker alleges disability due to depression, anxiety, attention-deficit/hyperactivity disorder, panic attacks, carpal tunnel, vertigo, neuropathy in feet, arthritis in arms and hands, high cholesterol, and insomnia. Tr. 280. The Social Security Administration (SSA) denied Parker's applications initially and on reconsideration. Tr. 57-100. Parker then requested a hearing before an administrative law judge (ALJ), tr. 159-60. The hearing was held before ALJ Angela Neel on July 11, 2023. Tr. 36-56. Parker was represented by counsel and testified on her own behalf. *Id.* A vocational expert (VE) also testified. *Id.*

On November 8, 2023, the ALJ issued an unfavorable decision finding that Parker: (1) had not engaged in substantial gainful activity since her alleged onset date of December 15, 2020; (2) has the following severe impairments: right C5-6 radiculopathy and right ulnar neuropathy; bilateral carpal and cubital tunnel syndromes with right trigger index and thumb fingers, status post right releases with right ulnar nerve decompression, and tenosynovitis of the radial styloid; bipolar disorder with depressive disorder; anxiety disorder; attention deficit hyperactivity disorder; and nicotine dependence; (3) did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b);[2] and (5) Parker is unable to perform any past relevant work but there are

---

[2] The ALJ determined that Parker could perform light work with the following limitations: that she could lift and/or carry ten pounds frequently, and twenty pounds

2

jobs that exist in significant numbers in the national economy that she can perform including routing clerk, marker, and photocopying machine operator. Tr. 15-28. The ALJ concluded Parker was not disabled. Tr. 28. Parker requested appellate review, which was denied; thus the ALJ's decision is the final decision of the Commissioner. Tr. 1-3. The parties have submitted briefing, docs. 13 and 16, and this matter is ripe for review.

## Authority

The Social Security Act provides benefits to those who cannot find work due to disability. *See* 42 U.S.C. § 423(a). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).[3] A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological

---

occasionally, sit for six hours, and stand and/or walk for six hours, in an eight-hour workday; that she is unable to climb ladders, ropes, and scaffolds but could occasionally climb ramps and stairs, kneel, crouch, and crawl; that she can perform frequent balancing and stooping, and frequent pushing and pulling with the upper extremities, and frequent bilateral handling and fingering; that she is unable to operate a motor vehicle, and should not work around hazardous moving mechanical parts, or work at unprotected heights; that she mentally limited to performing simple tasks with frequent interaction with supervisors and coworkers, and occasional interactions with the general public. Tr. 20.

[3] Unless otherwise noted, citations to the Code of Federal Regulations (C.F.R.) are to the version in effect at the time of the ALJ's decision.

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382c(a)(3)(D).

The Social Security Regulations (Regulations) set forth a five-step, sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). An ALJ must determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) that the severe impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC—the capacity to work notwithstanding impairments—to perform past relevant work;[4] and (5) given the claimant's age, education, work experience, and RFC, if there are other jobs the claimant can perform in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-38 (11th Cir. 2004).

Although the claimant has the burden of proof in steps one through four, the burden shifts to the Commissioner in step five to show "the existence of . . . jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Goode v. Comm'r of Soc. Sec*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the Commissioner meets that burden, it shifts back to the claimant to "prove that he is unable to perform those jobs." *Id.* A court's review of a decision by the Commissioner is limited to determining whether correct legal standards were applied and whether substantial evidence

---

[4] "[T]he RFC . . . is used to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step" of the sequential analysis." *Phillips*, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1520(e)).

4

supports the findings. 42 U.S.C. § 405(g); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997) (citation omitted). "Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (additional citations and quotations omitted).

The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* The Court "may not decide facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x. at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). Within this role, however, federal courts do not "act as automatons." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). A court retains an important function to "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citation omitted). While a court reviews the Commissioner's decision with deference to his factual findings, legal conclusions are reviewed de novo. *Keeton v. Dep't of Health and Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation omitted). Significantly, this Court must affirm a decision supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (per curiam) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## Discussion

Parker raises a single issue on appeal. She argues that the ALJ, when evaluating the medical opinion of plaintiff's treating psychiatrist Vijaykumar Bhujang, M.D.,[5] applied the incorrect legal standard and made findings that are not supported by substantial evidence *See* doc. 13 at 4-10. Parker contends the ALJ failed to explain her factual findings in concluding that Dr. Bhujang's opinion was inconsistent with the medical record evidence. *Id.* at 7. Instead, Parker argues that the ALJ made a conclusory finding of inconsistency, which is "insufficient to show [the] ALJ's decision is supported by substantial evidence." *Id*. The Commissioner counters that the ALJ properly evaluated Dr. Bhujang's opinion and that her determination is supported by substantial evidence. *See* doc. 16. The Commissioner urges that the ALJ's decision, taken as a whole, supports that Dr. Bhujang's opinion was properly evaluated in compliance with the applicable Regulations. *See id.* at 11-12.

Under the Regulations,[6] the ALJ is to weigh the persuasiveness of medical opinions using the following factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) any other relevant factors which tend to support or contradict a medical opinion or prior

---

[5] Because Parker's raises a single issue relating to the mental limitations opined by Dr. Bhujang, I limit my discussion to the sufficiency of the RFC as it relates to Parker's mental functional capacity.

[6] The Regulations, which govern the evaluation of medical opinions, were amended for disability applications filed after March 27, 2017. 20 C.F.R. § 1520c; *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th at 1104 n.4 (11th Cir. 2021). Because Parker filed her claims after June 2021, I apply the amended Regulations.

6

administrative finding. 20 C.F.R. § 404.1520c(c)(1)-(5). Supportability is the extent to which a medical source has articulated support for its own opinion. *Barber v. Comm'r of Soc. Sec.*, Case No.: 6:20-cv-1222-LRH, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021) (citation omitted).[7] Consistency means the extent to which the provider's opinion relates to other evidence in the record. *Id.*

Of the five factors, supportability and consistency are the most important. *See* 20 C.F.R. § 404.1520c(b)(2); *see also Barber*, 2021 WL 3857562, at *3. The ALJ must explain how she considered supportability and consistency but does not have to explain her analysis of the remaining factors. *See* 20 C.F.R. 404.1520c(b)(2). The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Notably, the "new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding.'" *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation omitted).

In step three of the sequential process, the ALJ assigned Parker an RFC for light work. Tr. 20-26. In so finding, the ALJ evaluated the entirety of the medical evidence, including the opinion of Dr. Bhujang. Tr. 25. As a part of his opinion, Dr. Bhujang

---

[7] The Court acknowledges and considers that "[u]npublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." Bonilla v. Baker Concrete Constr., Inc., 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) (citation omitted).

completed a Medical Source Questionnaire regarding Parker's ability to perform work-related activities on a sustained basis. Tr. 779-782.

Dr. Bhujang opined that Parker had multiple limitations spanning from "moderate" to "extreme" as related to the four areas of mental functioning. *Id.* Specifically, Dr. Bhujang opined that Parker had "[m]oderate" limitations in understanding, remembering and, carrying out simple instructions; interacting appropriately with the public and coworkers; and making judgments in simple work-related decisions. Tr. 780-81. Dr. Bhujang also opined that Parker had "[m]arked" limitations understanding, remembering, and carrying out complex instructions, in interacting appropriately with supervisors, and maintaining socially appropriate behaviors and cleanliness. *Id.* Lastly, Dr. Bhujang. found that Parker had "[e]xtreme" limitations in maintaining concentration for extended periods, performing activities within a schedule, maintaining attendance, and responding to usual work situations and changes. *Id.*

Upon review, the ALJ determined that Dr. Bhujang's opinion was neither supported by his treatment notes, nor consistent with the other medical record evidence. Tr. 25. The ALJ ultimately found Dr. Bhujang's opinion to be unpersuasive, stating in relevant part:

> While he was a treating psychiatrist, his opinion was not persuasive as it was not consistent with the medical evidence record or supported by his treatment notes and observations. For example, in treatment notes, he reported the claimant's activities of daily living were generally normal (Exhibits C10F/4; C15F; C19F; C22F). He observed the claimant to be attentive, pleasant, motivated,

8

>engaged, and cooperative, with generally good concentration and memory (Exhibits C10F/4; C15F; C19F; C22F). Treatment was generally effective. The claimant had reported feeling better and stopped taking Abilify (Exhibit C22F). Overall, his assessment was an overstatement of the claimant's limitations and not supported by his treatment notes. Further, they were not consistent with other evidence of record including the claimant's function report and a third-party function report (Exhibits C4E; C7E).

Tr. 25.

As an initial matter, I note that Parker does not contest the ALJ's evaluation of Dr. Bhujang's medical opinion as a whole. Rather, Parker raises the narrow issue of whether the ALJ properly evaluated the "consistency" of the opinion.[8] *See* doc. 13 at 7. In raising this issue, Parker effectively makes two arguments regarding the ALJ's evaluation of Dr. Bhujang's medical opinion. *See id.* at 7-10.

First, she argues that the ALJ did not properly address the consistency factor because her discussion of Dr. Bhujang's opinion was "cursory and limited." *See generally* doc. 13. In support, Parker relies upon two cases, *Poplardo v. Astrue*, No. 3:06-CV-1101-J-MCR, 2008 WL 68593, at *11 (M.D. Fla. Jan. 4, 2008) and *Paltan v. Comm'r of Soc. Sec.,* No. 6:07CV932-ORL-19DAB, 2008 WL 1848342, at *5 (M.D. Fla. Apr. 22, 2008). In both *Poplardo* and *Paltan,* the Court took issue with the ALJ's failure to articulate inconsistencies within the medical record evidence or cite to specific medical evidence that was inconsistent with the opinion. *Poplardo*, 2008 WL 68593, at

---

[8] Parker does not take issue with the ALJ's analysis regarding the supportability of Dr. Bhujang's opinion; accordingly, I limit my analysis to the sufficiency of the ALJ's decision as it relates only to the consistency of Dr. Bhujang's opinion.

\*11; *Paltan*, 2008 WL 1848342, at \*5. This is not the case here. Although the ALJ's rationale consists of only a single sentence, the ALJ supports her findings by citing two-medical reports, which—upon review—are indeed inconsistent with Dr. Bhujang's opinion. *See* tr. 25

Parker also argues the ALJ's determination was cursory because she "failed to mention any other medical evidence" when evaluating the consistency of Dr. Bhujang's opinion. *See* doc. 13 at 8. Under the amended Regulations the ALJ is not required to discuss every part of the record in her findings; rather, she must discus the supportability and the consistency of the medical opinions. 20 C.F.R. § 404.1520c(b)(1)-(2). The ALJ supported her decision with specific reference to the record, and is not required to discuss all "other medical evidence . . . ." Doc. 13 at 8. *see Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005) (concluding that substantial evidence is met when the record supports more than a mere scintilla, but less than preponderance); *see also Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Thus, under the relevant law, the ALJ sufficiently addresses the consistency factor of Dr. Bhujang's opinion.

Second, Parker generally argues that substantial evidence does not support the ALJ's conclusion that Dr. Bhujang's opinion is inconsistent with other medical record evidence. Doc. 13 at 8-10. Specifically, Parker points to the third-party function report completed by Michael Weiser—Parker's roommate[9]—which she claims confirms her

---

[9] The record is unclear as to whether Weiser and Parker are roommates or are in a romantic relationship. Weiser failed to clarify his relationship with Parker in his third-party

limited functional capabilities, including lack of concentration, an inability to handle stress, and desire to be alone. *Id.* at 8 (citing tr, 288-95). She also points to her own testimony that states the same. *Id*. (citing tr. 308-15).

After an independent review of the medical reports, I find the ALJ's findings are supported by substantial evidence. Throughout her decision, the ALJ cites to record evidence in support of her findings, including medical reports that demonstrate that Parker's level of functioning is not as severely limited as opined by Dr. Bhujang. Tr. 19, 24-26. Additionally, the record reflects that Parker can manage her personal care;[10] gets along with authority figures; has never been fired due to her inability to work with others; maintains relationships with friends, family, and neighbors; can follow written instructions well; and adequately manages changes in her routine. Tr. 289, 293; 309-10, 312-14. Further, Weiser reported that Parker can pay attention "[f]or quite some time" and follows written instructions "well." Tr. 293.

Although Parker argues the ALJ's decision is not supported by substantial evidence, I find it telling that instead of citing medical evidence not considered by the ALJ, Parker merely disagrees with how the ALJ assessed the evidence before her. Parker's contention essentially requests the Court reweigh evidence previously considered by the ALJ and find in her favor, which the Court may not do. *See Moore*,

---

function report, although he states that he lives with her. Tr. 288. Moreover, in her functional report, Parker asserts that she lives with her boyfriend but does not clarify whether that individual is Weiser. Tr. 308.

[10] "Personal care" is defined as encompassing dressing, bathing, grooming, shaving, feeding oneself, and using the bathroom. *See* doc. 289, 309.

11

405 F. 3d at 1211 ("[t]his limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence"). While the Court is sympathetic to Parker's condition and may have concluded differently as it relates to her disability status, the Court may not substitute its own judgment and remand a claim that is supported by substantial evidence. Because the ALJ sufficiently considered the consistency of Dr. Bhujang's opinion, and her determination is supported by substantial evidence, I recommend that remand is not warranted.

## Recommendation

Because the ALJ's decision is supported by substantial evidence, I respectfully **recommend**:

1. **Affirming** the ALJ's decision under sentence four of 42 U.S.C. § 405(g);

2. Directing the Clerk of Court to **enter judgment** in favor of the Commissioner and against Rebecca Latrice Parker; and

3. Directing the Clerk of Court to **close** the file.

**Entered** in Jacksonville, Florida on July 25, 2025.

LAURA LOTHMAN LAMBERT
United States Magistrate Judge

c:
The Honorable Julie S. Sneed, United States District Judge
Sarah Patience Jacobs, Esquire
Richard A. Culbertson, Esquire
Kelly Nizzari, Esquire
John F. Rudy, III, Esquire

## **Notice to the Parties**

"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id*. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Order (doc. 3), No. 8:20-mc-100-SDM, entered October 29, 2020, at 6.